Todd Blanche
Acting Attorney General
Brandon L. Pang
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 13 2026

SEAN F. McAVOY, CLERK
DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

DIEGO RIGOBERTO VAZQUEZ II,

Defendant.

Case No.: 4:25-CR-06007-RLP

Plea Agreement

Plaintiff United States of America, by and through Brandon Pang, Assistant United States Attorney for the Eastern District of Washington, and Defendant DIEGO RIGOBERTO VAZQUEZ II ("Defendant"), both individually and by and through Defendant's counsel, Dennis Hanson, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 2 of the Indictment filed on February 19, 2025, which charges Defendant with Possession with Intent to Distribute 28 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), a Class B felony.

Defendant understands the following potential penalties apply:

a.    a term of imprisonment of not less than 5 years and up 40 years;

PLEA AGREEMENT - 1

b.  a term of supervised release of not less than 4 years and up to a lifetime;

c.  a fine of up to $5,000,000; and

d.  a $100 special penalty assessment.

2.  Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to the following terms:

a.  5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.  3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.  2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.  The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.  sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

b.    the right to see, hear and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Denial of Federal Benefits

Defendant understands that by entering this plea of guilty, Defendant may no longer be eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan,

PLEA AGREEMENT - 4

professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

7.     Elements of the Offenses

The United States and Defendant agree that to convict Defendant of Count 2, Possession with Intent to Distribute 28 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), the United States would have to prove the following beyond a reasonable doubt:

> *First*, on or about January 8, 2025, in the Eastern District of Washington, the Defendant possessed cocaine base;
>
> *Second*, the Defendant possessed the cocaine base with the intent to distribute it to another person; and
>
> *Third*, the Defendant possessed 28 grams or more of cocaine base.

8.     Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On January 8, 2025, the Pasco Police Department (PPD) responded to a call regarding a Lexus that had its turn signal on for about an hour in the middle of the road on Rd 76 and Court St in Pasco, WA. Officer Cavazos arrived and observed the vehicle stopped on the intersection of Rd 76 facing north onto Court St and partially on the roadway at the Court St fog-line and slightly beyond onto Court St. Officer Cavazos stopped and observed the vehicle begin to move slowly north and slightly west across the lanes of traffic. The vehicle moved forward crossing the

PLEA AGREEMENT - 5

roadway and entered the north side of the easement area, and scraped a gas line pole, which caused minor damage to the vehicle. The vehicle then collided into a chain link fence in the gas power station causing the vehicle to stop.

Officer Cavazos contacted the vehicle and observed the driver, later identified as Diego Rigobeto VAZQUEZ (Defendant), was unresponsive. His eyes were closed and appeared to be passed out or unconscious. Officer Cavazos knocked on the window repeatedly and was yelling to get Defendant's attention, Officer Cavazos could see in plain view from the exterior of the vehicle there was ammunition in the vehicle. Concerned, Officer Cavazos called for back-up and a medic. The vehicle was lock, but Officer Cavazos was able to unlock the vehicle Defendant was still not responsive through this process.

Meanwhile, PPD Sgt. Andrews arrived as backup, and opened the driver's door and noted spent shell casings inside the driver's arm rest. Defendant was not responsive with the opening of the driver's door. Sgt. Andrews checked for a carotid pulse, and noticed that Defendant was warm, but he was unable to get a good pulse. Due to his position in the vehicle and proximity to possible weapons Sgt. Andrews decided to remove Defendant from the vehicle prior to continuing to check for a pulse. Sgt. Andrews grabbed Defendant's left arm and started to pull him out of the vehicle, and he began to regain consciousness. As Sgt. Andrews was removing Defendant, he observed additional spent bullet casings on the driver's seat. Due to seeing several bullet casings, along with Defendant wearing very loose baggy clothing, Sgt. Andrews detained him in handcuffs for safety. Sgt. Andrews started a pat down search and felt a pipe in his front left pant pocket.

Defendant was detained and advised that he had a firearm on his person (waist band), which was loaded and chambered. Officer Cavazos removed the firearm from his person, which was identified as a Pietro Beretta .380 caliber pistol with serial number H37214. It had 1 magazine inside of it and 2 bullets in the magazine. Officer Cavazos observed there was not a round chambered. Further

PLEA AGREEMENT - 6

inspection of the vehicle from the outside revealed multiple bullet casings of different calibers and a soft firearm case.

Officer Cavazos read Defendant his *Miranda* rights, which he acknowledged and waived. He explained he had been arguing with friends and was extremely tired, which led to him falling asleep in the car. He admitted to using cocaine the previous night but could not specify the time. Officer Cavazos noted Defendant appeared lethargic with slurred speech; however, did not detect the odor of intoxicants. Officer Cavazos asked why he was passed out in the vehicle and again said he was very tired. Officer Cavazos asked about the handgun to which Defendant stated it was his, he did not have a concealed weapons permit and had purchased the firearm himself but did not tell Officer Cavazos from whom. Defendant advised he uses cocaine "all the time".

Medics arrived and spoke with DEFENDANT to confirm this was not a medical emergency. Defendant underwent and failed field sobriety tests. Given the lack of odor of alcohol, they obtained a blood sample to determine what intoxicants Defendant was operating a vehicle under the influence of. Defendant was arrested, and in his pockets, PPD located approximately 63.7 grams of suspected cocaine and used drug use paraphernalia. A folded 10-dollar bill was located in Defendant's right front pocket which he admitted had more drugs in it, later determined to be methamphetamine. Defendant also had a bottle of Farmapram (Xanax) along with another smaller bag of cocaine weighing approximately 9.73 grams.

PPD Street Crimes Unit obtained state search warrants. In Defendant's vehicle, PPD located a black safe in the front passenger floorboard that contained numerous baggies containing suspected methamphetamine, a bag containing suspected cocaine base (weighed approximately 255 gross grams), a rifle suppressor, and very small amount of U.S. Currency. There was drug paraphernalia in the cab of the vehicle as well as both spent and live ammunition of

PLEA AGREEMENT - 7

various calibers and brands. Two cellular devices were recovered from the driver's floorboard. In the trunk of the vehicle, PPD located two PPS-43 rifles that appeared to be fully automatic and a sawed-off 20-gauge shotgun. The rifle suppressor (GEMTECH ABYSS 5.56 SN#S23-001913) and was identified as a from a stolen Kennewick Police Department rifle. The accompanying AR-style rifle was not recovered from the vehicle.

A search warrant was obtained for Defendant's Pasco residence. In Defendant's bedroom, searching agents located drug residue, shotgun shells, electronic scales with white residue, ledgers, and baggies, along with a Jesus Malverde shrine (patron saint of drug dealers). Defendant's father was contacted and was upset at his son's activities. He advised Defendant would occasionally use an RV that was parked at the property; however, there were people there currently that they did not have permission to be there. He asked for PPD assistance in removing the occupants. He consented to a search of the RV and PPD removed the occupants and located a Springfield 1911 loaded pistol (stolen) in a backpack on the seat next to the kitchen table, a Rock Island 38 caliber pistol (stolen) under the lower bunk bed mattress and a green bullet proof vest carrier on top of the upper bunkbed mattress. Also located throughout the trailer were numerous caliber cartridges of ammunition.

Federal search warrants were executed on Defendant's phones. A review of the messages showed numerous text threads indicative of illicit conduct. Specifically, messages documented Defendant talking in coded language about selling varying amounts of controlled substances and their associated prices. Other conversations referenced Defendant purchasing and selling "switches", which is a common term used for a Glock Switch, aka, a machinegun conversion device.

The suspected controlled substances that were seized were sent to the DEA Laboratory for further analysis. The DEA Laboratory determined the total amount of pure (actual) methamphetamine was approximately 218.9 grams and the total

PLEA AGREEMENT - 8

amount of cocaine was approximately 50.9 grams. As of the date of this plea agreement, a lab report has not been received regarding the cocaine base, but Defendant stipulates and agrees that it will indeed contain cocaine base and weigh in excess of 28 grams.

Defendant further stipulates and agrees that on or about January 8, 2025, within the Eastern District of Washington, he possessed 28 grams or more of cocaine base, with the intent to distribute it to another person.

9.    The United States' Agreements

a.    *Not to File New Charges:*

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

b.    *Dismiss Remaining Counts of Indictment:*

The United States agrees to dismiss the remaining counts of the Indictment, as to the Defendant, at the time of sentencing, provided Defendant does not breach the Plea Agreement.

10.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

a.    *Base Offense Level and Relevant Conduct*

The United States and the Defendant agree Defendant's Base Offense level is 32 as at least 3,000 kilograms but less than 10,000 kilograms of converted drug

PLEA AGREEMENT - 9

weight[1] was possessed with the intent to distribute and the Defendant's relevant conduct for sentencing purposes should be calculated upon this amount, pursuant to USSG §1B1.3. *See* USSG §2D1.1(c)(4); §1B1.3.

        b.    *Special Offense Characteristics*

The United States and Defendant agree and stipulate that a 2-level increase should apply as Defendant possessed a dangerous weapon, to wit: a firearm, in connection with the offense. USSG §2D1.1(b)(1).

The United States and Defendant agree Defendant is not eligible for the application of the Safety Valve pursuant to USSG §2D1.1(b)(18), USSG §5C1.2, and 18 U.S.C. § 3553(f).

The parties have no other agreements as to applicability of any other Special Offense Characteristics.

        c.    *Role Adjustments*

The United States and Defendant agree to recommend no role adjustment applies. *See* USSG §§3B1.1; 3B1.2.

        d.    *Zero-Point Offender Reduction*

The United States and Defendant agree that Defendant is not eligible to receive a reduction under USSG §4C1.1.

        e.    *Acceptance of Responsibility*

The United States will recommend that Defendant receive a 3-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

        i.    accepts this Plea Agreement;

        ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

---

[1] The parties agree that use of the *Drug Conversion Table,* USSG §2D1.1 n.8(D) is appropriate. The parties also recognize that this offense level remains unchanged whether the cocaine base is included or not.

PLEA AGREEMENT - 10

       iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

       iv.    provides complete and accurate information during the sentencing process; and

       v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    f.    *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

       i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

       ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing

PLEA AGREEMENT - 11

information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a

PLEA AGREEMENT - 12

higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

g.    *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct and Defendant's relevant conduct.

h.    *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11.    Incarceration

The United States agrees to recommend a sentence of 78 months of imprisonment. Defendant may recommend a sentence as low as 60 months of imprisonment, which Defendant recognizes is the applicable mandatory minimum.

PLEA AGREEMENT - 13

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

12.    Supervised Release

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

PLEA AGREEMENT - 14

a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

13. Criminal Fine

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment as to Count 2, for which he is pleading, to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

- a Peitro Beretta .380 caliber pistol bearing serial number "H37214"

Defendant acknowledges that the assets listed above are subject to forfeiture to the United States pursuant to 21 U.S.C. § 853 as property representing proceeds and/or as property used or intended to be used in any manner or part to commit or

PLEA AGREEMENT - 15

to facilitate the commission of the offense(s) to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding and to execute all forms and pleadings necessary to effectuate such forfeiture of assets. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture. Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

17.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

PLEA AGREEMENT - 16

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack

PLEA AGREEMENT - 17

upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b.    The United States may prosecute Defendant on all available charges;

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 18

20.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Acting Attorney General

_____    8/13/26
Brandon L. Pang                     Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    8/11/2026
DIEGO RIGOBERTO VAZQUEZ II          Date
Defendant

PLEA AGREEMENT - 19

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____   8/11/2026
Dennis Hanson          Date
Attorney for Defendant

PLEA AGREEMENT - 20